<u>RICHARD CASPER</u>
v.
<u>DIAMOND RESORTS INTERNATIONAL MARKETING, INC., et al.</u>

NOTICE OF REMOVAL OF ACTION (DIVERSITY)

Exhibit "A" – *Complaint, dated April 9, 2018*

Electronically Filed
4/9/2018 4:04 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
**THE THATER LAW GROUP, P.C.**
M. LANI ESTEBAN-TRINIDAD
Nevada Bar No. 006967
6390 W. Cheyenne Ave., Ste. A
Las Vegas, Nevada 89108
Telephone: (702) 736-5297
Fax: (702) 736-5299
Email: lani@thaterlawgroup.com
Attorney for Plaintiffs,
RICHARD CASPER and NORMA JEAN MCGRATH

## EIGHTH JUDICIAL DISTRICT OF NEVADA
## CLARK COUNTY, NEVADA

| | |
|---|---|
| RICHARD CASPER, an individual; NORMA JEAN MCGRATH, an individual, <br><br>                    Plaintiff, <br><br>vs. <br><br>DIAMOND RESORTS INTERNATIONAL MARKETING, INC., a foreign corporation; DIAMOND RESORTS INTERNATIONAL, INC., A Delaware corporation; DOES 1 through 10 inclusive; DOES & ROES CORPORATIONS/ ENTITIES 1 through 10 inclusive; DANIEL PERCY, an individual, <br><br>                    Defendants. | **DEMAND FOR JURY TRIAL** <br><br> Case No. A-18-772558-C <br><br> Dept. No. Department 6 <br><br> **COMPLAINT** <br> 1. ASSAULT AND BATTERY; <br> 2. UNREASONABLE INTRUSION UPON SECLUSION OF ANOTHER; <br> 3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; <br> 4. NEGLIGENCE; and <br> 5. NEGLIGENT SUPERVISION, HIRING & TRAINING <br><br> *__EXEMPT FROM ARBITRATION - AMOUNT IN CONTROVERSY EXCEEDS $50,000.00__* |

## COMPLAINT

Plaintiffs RICHARD CASPER and NORMA JEAN MCGRATH, through their attorneys, Maile Lani Esteban-Trinidad, Esq., of THE THATER LAW GROUP, P.C., for their causes of action against the above-named Defendants, complains and alleges as follows:

-1-

# I.
# INTRODUCTION

Plaintiff Richard Casper and his fiancée, Plaintiff Norma Jean McGrath, were invited guests of Diamond Resorts at a Diamond Resorts property in Mexico when the Vice-President of Sales for one of Defendant Diamond Resorts International's properties in Las Vegas (Polo Towers) entered Plaintiffs' bedroom at night where the two had been sleeping and committed assault upon their persons. As Plaintiff Casper is both an Owner of Diamond Resorts timeshare points and an Diamond Resorts employee, Plaintiff Casper complained to Defendants management about the assault. Shortly thereafter, Defendant DIAMOND RESORTS retaliated and terminated Plaintiff CASPER'S employment with Defendant DIAMOND RESORTS, to his damage and detriment.

# II.
# PARTIES & JURISDICTION

1. This Court has subject matter jurisdiction pursuant to Article VI, Section 6 of the Nevada Constitution, and personal jurisdiction over Defendants, and each of them, in accordance with NRS 15.065 on grounds that such jurisdiction is not inconsistent with the Nevada Constitution or the United States Constitution.

2. Venue is proper in the Eight Judicial District Court in accordance with NRS 13.010 and NRS 13.040.

3. Plaintiff RICHARD CASPER (hereinafter "CASPER") is and was, at all times relevant hereto, an individual presently residing in the State of Nevada, Las Vegas.

4. Plaintiff NORMA JEAN MCGRATH (hereinafter "MCGRATH"), is and was, at all times relevant hereto an individual presently residing in the State of Nevada, Las Vegas. Plaintiff McGrath is engaged to Plaintiff CASPER.

5. Upon information and belief, Defendant DIAMOND RESORTS INTERNATIONAL MARKETING, INC., ("DRIM") is a foreign corporation, registered with the Nevada Secretary of State, and is and was, at all times relevant herein doing business in the State of Nevada, Las Vegas with location at 10600 West Charleston Blvd., Las Vegas, Nevada 89135.

6. Upon information and belief, Defendant DIAMOND RESORTS INTERNATIONAL, IN. ("DRII"), is a Delaware corporation and has a principal place of business located at 10600 West Charleston Blvd., Las Vegas, Nevada, 89135. Prior to September 2, 2016, DRII was a publicly-held company. On September 2, 2016, DRII was merged into, and therefore acquired by, a fund managed by APOLLO MANAGEMENT VIII, L.P., which is controlled by Defendant Apollo Global Management, LLC, in an all cash transaction. Since September 2, 2016, the date this "going private" transaction was consummated – DRII and all of its various affiliates and subsidiaries, including, but not limited to Defendant DRIM, have been owned and controlled by Apollo. Defendant DRIM and DRII are hereby identified collectively as "DIAMOND RESORTS Defendants" or "DIAMOND RESORTS".

7. Upon information and belief, Defendant DANIEL PERCY (hereinafter "PERCY"), is and was, at all time relevant hereto an employee and/or officer of Defendant DRIM or DRII, at all times relevant hereto was the Vice-President of Sales at Polo Towers, who was residing in Las Vegas, Nevada and now residing and/or working in the State of Hawaii, as an employee or agent of the DIAMOND RESORTS Defendants.

8. Upon information and belief, and at all times relevant hereto, Defendants named and/or fictitiously named, and/or other names, or each of them, were the agents, ostensible agents, servants, employees, employers, alter-egos, partners, co-owners and/or joint ventures of each other and of their co-Defendants, and were acting within the color, purpose, and scope of their employment, agency, ownership, and/or joint ventures, and by reason of such relationships, the Defendants, and each of them,

-3-

are jointly and severally responsible and liable for the acts or omissions of their co-Defendants, as alleged herein. The true names and capacities whether individual, corporate, associate or otherwise of Defendants DOES I through X, inclusive, are unknown to Plaintiffs who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe and therefore, alleges that each of the Defendants designated herein as a ROE and DOE is/are legally responsible in some manner for the events and happenings herein referred to and legally caused injury and damages proximately thereby to Plaintiffs as herein alleged. Plaintiffs are informed and believe and thereon alleges that Defendants participated in, ratified and/or condoned the acts complained of in Plaintiffs' Complaint and the subject matters of this action.

9. All Defendants named herein and fictitiously named herein are jointly and severally liable to Plaintiffs' for damages herein alleged herein in an amount in excess of $15,000.00, to be proven at time of trial.

## III.
## FACTUAL ALLEGATIONS

### THE PARTIES

### DIAMOND RESORTS

10. DIAMOND RESORTS Defendants own a network of 379+ vacation resort/accommodation destinations in 35 countries around the world and sells vacation ownership points to the public. The points may be used for Vacation Resorts, Hotels, Cruises, accommodations, events, and activities, sponsored by and/or otherwise controlled or owned by the DIAMOND RESORTS Defendants.

### RICHARD CASPER

11. On or about April, 2014, Defendant DRIM hired Plaintiff CASPER as a Vacation Counselor for Cancun Resort in Las Vegas, Nevada. Defendant DRIM paid Plaintiff CASPER a base compensation of minimum hourly wage plus base commissions.

..

-4-

12. Within a few short months, Plaintiff CASPER exceeded all sales expectations and site records.

13. Plaintiff CASPER became one of Defendant DIAMOND RESORTS top sales producers, generating and earning individual earnings from sales commissions of approximately $450,000.00 in 2014 (an eight (8) month period of employment); in 2015, approximately $1.5 million and, in 2016 and 2017, approximately $2.4 million dollars each year.

14. In addition to being an employee of DIAMOND RESORTS Defendants, Plaintiff CASPER is and has been a Diamond Resort Gold Loyalty Owner with Diamond Resorts since about 2015 to present date. 15. As an Owner, Plaintiff CASPER owns certain timeshare "points" and is allowed access to DIAMOND RESORTS Defendants', properties and/or accommodations throughout the world, including, Mexico.

16. Plaintiff CASPER's job duties with DIAMOND RESORTS included selling certain upgrades to existing owners of "Diamond Resorts Points". As part of his job duties, Defendant PERCY and Plaintiff CASPER interacted daily, as Plaintiff CASPER was a subordinate of Defendant PERCY.

17. Plaintiff CASPER performed his job exceptionally well and was highly respected by management and his peers.

### NORMA JEAN MCGRATH

18. In or about 1996, Plaintiff CASPER and Plaintiff MCGRATH met in Las Vegas, Nevada. Plaintiffs became engaged to marry on or about 2015.

19. At the time of their engagement, Plaintiff CASPER was already working in Las Vegas, Nevada with DRIM as a Vacation Counselor.

20. Plaintiff McGRATH was known to certain Diamond Resorts employees, including Defendant PERCY, as Plaintiff CASPER's fiancée.

### ASSAULT BY DANIEL PERCY AT DIAMOND RESORTS PROPERTY

21. In or about November, 2017, Plaintiff CASPER and Plaintiff McGRATH travelled together from Las Vegas, Nevada to Cabo San Lucas, Mexico to participate in the DIAMOND RESORTS Defendants "1st Annual Chief Executive Circle" event for employees, such as CASPER, who had won a sales

contest, and "Diamond Event of a Lifetime/Diamond Concert Series" for DIAMOND RESORTS owners, such as CASPER, and prospective owners.

22. This DIAMOND RESORTS event in Cabo San Lucas, Mexico was billed as hosted by DIAMOND RESORTS Chief Executive Officer, Michael Flaskey. Defendant DIAMOND RESORTS paid for both Plaintiffs' airfare, ground transportation, accommodations and food on certain days and nights.

23. This DIAMOND RESORTS event was also a work-related function whereby winners of a sales contest (such as Plaintiff CASPER) were required to attend work-related sales dinners with their significant others (such as Plaintiff McGRATH) and work sponsored events and provided accommodations at a DIAMOND RESORTS property with several other co-workers/sales contest winners.

24. During this event, Defendants DIAMOND RESORTS required CASPER to mingle at dinner with other DIAMOND RESORTS owners at certain places and times designated by DIAMOND RESORTS.

25. During dinner on the first night of the event, Defendant PERCY sat at the same table as the Plaintiffs, sitting next to Plaintiff MCGRATH. Alcohol was provided freely and Defendant PERCY was drinking alcohol.

26. Following dinner, DIAMOND RESORTS sponsored a concert by country singer, Cole Swindell. Alcohol was provided at the concert and Defendant PERCY was drinking alcohol.

27. Plaintiffs attend the concert with other DIAMOND RESORTS owners, including, Defendant PERCY.

28. Plaintiffs left before the concert ended to retire early to their guest accommodations.

29. Upon information and belief, after the concert, Defendant PERCY and other DIAMOND RESORTS employees and contest winners were invited by Michael Flaskey to his Penthouse Suite at Cabo Azul for more cocktail drinks and then later to the hotel bar, whereupon Defendant PERCY and another Diamond Resorts, continued to drink alcohol and PERCY and another employee were nearly engaged in an altercation.

30. Upon information and belief, PERCY was drinking heavily at the dinner, the concert, and at Flaskey's Suite and hotel bar.

31. Plaintiffs' guest accommodations at the DIAMOND RESORTS event were at guest bedroom at Villa Palmila, a DIAMOND RESORTS property ("Villa"). The Villa was a well-appointed house with several bedrooms. Plaintiffs had their own bedroom and shared the Villa with other Diamond Resorts employees and contest winners who occupied the other bedrooms.

32. To get to Plaintiffs' bedroom in the Villa, it was necessary to walk through two sets of double doors.

33. Later that evening as Plaintiffs slept, Defendant PERCY suddenly and unexpectedly barged into Plaintiffs' bedroom at the Villa.

34. Plaintiffs were shocked and suddenly startled awake by Defendant PERCY'S abrupt intrusion into their bedroom at night, as they slept. Plaintiff McGRATH was laying on top of the covers, and not wearing any clothing but her thong underwear.

35. Before Plaintiffs could make sense of the sudden intrusion, Defendant PERCY jumped into the bed upon which Plaintiffs had been sleeping, forcefully lying next to CASPER. At which point, Defendant PERCY said, "I love you Rick," and put his arm around CASPER, telling CASPER, "let's go party!"

36. Simultaneously and unbeknownst to CASPER at that time, while in Plaintiffs' bed, Defendant PERCY started rubbing on MCGRATH's bare buttocks, without her consent. Defendant PERCY then yelled, "Damn! Norma Jean (McGrath) you have a nice ass!" whereupon CASPER immediately told PERCY to get out of the room.

37. Shocked and scared, Plaintiff MCGRATH could not bring herself to say anything to PERCY, with CASPER present, for fear of an altercation between the two.

38. Defendant PERCY left and went to the pool area of the Villa, whereupon Plaintiffs overheard PERCY loudly tell the other Villa guests and their spouses that Plaintiff MCGRATH has a "great ass."

39. After the intrusion, Plaintiffs tried to lock all the doors but could not find them and they went back to bed.

40. Not long thereafter, Defendant PERCY returned to Plaintiffs bedroom, barging in once again, and jumped into Plaintiffs' bed, startling and shocking Plaintiffs for a second time that night.

41. Upon the second intrusion, Defendant PERCY continued to ask Plaintiffs, "come party, come party!" Once again, Defendant PERCY started rubbing MCGRATH's bare buttocks. MCGRATH again could not bring herself to say anything to PERCY, with CASPER present, for fear of an altercation.

42. Plaintiff CASPER told PERCY to leave their bedroom, telling PERCY that CASPER just had surgery a month before. Defendant PERCY left, but returned, a third time, during which Defendant PERCY just stood by the Plaintiffs bedroom door, staring into the room, telling CASPER that he loved him.

### CASPER COMPLAINS TO DIAMOND; REQUESTS INVESTIGATION

43. When Plaintiffs' returned to Las Vegas, Plaintiff MCGRATH confided in CASPER, telling him that Defendant PERCY had rubbed her bare buttocks on the two occasions that PERCY barged into and intruded upon them during their stay the first night at the Villa in Mexico.

44. As a result, CASPER became upset and, the next day, CASPER went to Diamond Resorts corporate office on West Charleston to make a formal complaint of sexual assault against Defendant PERCY.

45. When CASPER arrived at the office, CASPER spoke with WILLIAM McCOY (Senior VP of WBU) and TONY WALKER (Mr. McCoy's superior the number two person in the company). CASPER told both what happened at the Villa and told both that PERCY had subjected his fiancée, MCGRATH, to unwanted sexual advances. Both appeared upset and asked CASPER what he wanted done about it. CASPER told them he wanted to know what DIAMOND RESORTS was going to do about PERCY's unacceptable behavior.

46. Mr. McCoy and Mr. Walker informed CASPER that they would investigate the incident and told CASPER not to attend a mandatory company function that night or the next night and to stay home and not come to work until the matter was resolved.

47. CASPER asked if both if he should contact Diamond Resorts Human Resources. Mr. Walker replied, "no, we are HR."

48. Thereafter, Nizar Jabara, from Diamond Resorts Human Resources contacted CASPER by phone and told him he would investigate the incident. CASPER told Mr. Jabara what happened at the Villa in Mexico. Mr. Jabara asked if there were any witnesses, other than CASPER, MCGRATH and PERCY. CASPER told him that there were co-workers/fellow contest winners at the pool at the Villa, including, manager, Mr. Guttierez, who would have heard Mr. Percy talking about MCGRATH's buttocks.

49. Plaintiff MCGRATH also told Diamond Resorts Human Resources what had happened, during which the HR interviewer replied, "sorry you went through this." Plaintiff MCGRATH also told Mr. Jabara that she was afraid for CASPER's job at the company because of what happened with PERCY in Mexico. Mr. Jabara told MCGRATH that CASPER would not be fired.

50. On or about a week or so later, CASPER received a phone call from Mr. Jabara. He told CASPER to come back to work immediately and that the investigation was complete. CASPER asked what the result was, Mr. Jabara replied that PERCY was, "no longer at Polo Towers." CASPER asked if he was fired, Mr. Jabra again repeated that Mr. Percy is "no longer at Polo Towers."

51. Upon information and belief, Defendant PERCY had not been fired, but had been laterally transferred to the same position he held in Las Vegas, Nevada to another Diamond Resorts property in Hawaii.

52. Plaintiff CASPER asked about whether CASPER would get paid for the time he was told to take off work pending the investigation. CASPER had missed approximately two (2) weeks of income and opportunity to earn commissions, which CASPER relied upon for his earnings, as the top sales person for the company. Mr. Jabara replied he would not.

**RETALIATION IN AFTERMATH OF COMPLAINT**

53. After CASPER returned to work following the complaint and investigation, things at work changed completely. Plaintiff CASPER went from being the company "golden boy," to being alienated. CASPER felt singled out by changes in procedures and policies that were designed to drastically reduce his commission income. At the company awards ceremony, where CASPER received an award for

-9-

Global Salesman of the Year (for the second time), CASPER's colleagues did not contact him to join in festivities or events as they normally did. CASPER believes they did so with the hopes that CASPER would become upset and quit.

54. Upon information and belief, Mr. McCoy told Diamond Resorts employees and and/or management that CASPER would not be returning to work after the awards ceremony, thereby supporting CASPER's belief that the company wanted to fire him after his complaints about PERCY.

55. About two weeks after CASPER returned to work, Mr. McCoy told CASPER that CASPER had gone after "one of (his) children" (referring to one of them as PERCY). Mr. McCoy said if it would have been someone else, it would have been a different outcome.

56. Less than two months later, on or about January 26, 2018, the company fired CASPER for pre-textual reasons, alleging "cause." Prior to his termination, Plaintiff CASPER had not been formally disciplined about complaints in over two years. Moreover, CASPER received complaints and cancellations in the previous years but was not similarly disciplined or fired.

57. Plaintiff CASPER believes he was fired for voicing his opposition to the actions of PERCY, a company Vice-President, as against his fiancée, during a company sponsored event while staying as guests on company property, thereby firing him in retaliation for his complaints of sexual harassment assault against his fiancée. Plaintiff CASPER believes his participation in the investigation against PERCY was also a basis for termination of his employment in retaliation.

58. Defendants termination of CASPER were pre-textual because any complaints, CASPER received were a direct and proximately result of CASPER following policies, procedures, mandates, and/or instructions from DIAMOND RESORTS management about the manner and method by which he would conduct, execute, explain, and/or sell DIAMOND RESORTS products to the public and existing Diamond Resorts point owners.

..

..

..

..

# IV.
# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## ASSAULT & BATTERY
### (PLAINTIFFS MCGRATH and PERCY AGAINST DEFENDANT PERCY)

59. Plaintiffs repeats and re-alleges each and every allegation made in the paragraphs above, as though set forth fully herein.

60. By intruding upon Plaintiffs in the night and climbing into the bed they slept in, Defendant PERCY caused Plaintiffs to feel apprehension of harmful offensive contact.

61. By subjecting McGRATH to unwanted physical touch upon her buttocks and body, Defendant PERCY made an unlawful, intentional, harmful contact constituting battery upon MCGRATH's person.

62. By subjecting CASPER to unwanted physical touch while as he lay in bed with his fiancée, Defendant PERCY subjected CASPER to unlawful, intentional, harmful contact constituting battery upon CASPER's person.

63. As a direct and proximate result of Defendant PERCY's actions, Plaintiffs suffered damages, in an amount in excess of $15,000.00, according to proof to be determined at time of trial, and is entitled to recover the same from Defendant.

64. Plaintiffs have been required to engage the services of an attorney to represent their interests and therefore Plaintiffs are entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## UNREASONABLE INTRUSION UPON SECULSION OF ANOTHER
### (PLAINTIFFS MCGRATH AND CASPER AGAINST DEFENDANT PERCY)

65. Plaintiffs repeat and re-alleges each and every allegation made in the paragraphs about, as though set forth fully herein.

-11-

66. Plaintiffs, and each of them, had an actual expectation of seclusion or solitude which was objectively reasonable;

67. Defendant PERCY intentionally intruded upon the seclusion of Plaintiffs, and each of them;

68. Such intrusion, at night, as they slept in a bedroom together, would be highly offensive to a reasonable person.

69. As a direct and proximate result of Defendant PERCY's actions, Plaintiffs suffered damages in an amount in excess of $15,000.00, according to proof to be determined at time of trial, and is entitled to recover the same from Defendant.

70. Plaintiffs have been required to engage the services of an attorney to represent their interests and therefore Plaintiffs are entitled to an award of attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (PLAINTIFFS AGAINST ALL DEFENDANTS)

71. Plaintiffs repeat and re-alleges each and every allegation made in the paragraphs about, as though set forth fully herein.

72. The conduct of Defendants, and each of them, its agents, employees, and/or representatives, was extreme and outrageous and done for the purposes of injuring Plaintiffs.

73. The conduct of Defendants, and each of them, its agents, employees, and/or representatives were intentional malicious, willful and outrageous, outside the bounds of normal decency, and therefore constitutes intentional infliction of emotional distress to Plaintiffs.

74. That as a direct and proximate result of Defendants conduct, and each of them, Plaintiffs suffered emotional distress which caused and will continue to cause Plaintiffs extreme mental and nervous pain and suffering.

75. That as a direct and proximate result of Defendants conduct, and each of them, Plaintiffs incurred and/or continue to incur medical expenses, possible future medical expenses, and loss of enjoyment of life, all to said Plaintiffs' general damages, according to proof to be determined at time of trial.

76. As a direct and proximate result of Defendant PERCY's actions, Plaintiffs suffered damages in an amount in excess of $15,000.00, according to proof to be determined at time of trial, and is entitled to recover the same from Defendant.

77. Plaintiffs have been required to engage the services of an attorney to represent their interests and therefore Plaintiffs are entitled to an award of attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE
### (BY PLAINTIFFS AGAINST DIAMOND DEFENDANTS)

78. Plaintiffs repeat and re-alleges each and every allegation made in the paragraphs about, as though set forth fully herein.

79. Plaintiff CASPER is an owner of Diamond Resorts points.

80. During above-referenced incident of assault and battery, Plaintiffs CASPER and MCGRATH, were at all times relevant thereto, both invited guests of Diamond Resorts, staying at a property under the ownership, direction, control and/or permission or supervision of Defendant DIAMOND RESORTS.

81. As guests staying at its accommodations, Defendant Diamond Resorts owned a duty of care to Plaintiffs.

82. Defendants breached that duty, whereby one of its management level employees intruded upon Plaintiffs' quiet seclusion, in the night, during their stay at Diamond Resorts property, and committed assault and battery upon their persons.

83. Defendants breach was the legal and proximate cause of Plaintiffs damages.

-13-

84. As a direct and proximate result of Defendant PERCY's actions, Plaintiffs suffered damages, according to proof to be determined at time of trial, and is entitled to recover the same from Defendant.

85. Plaintiffs have been required to engage the services of an attorney to represent their interests and therefore Plaintiffs are entitled to an award of attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION, HIRING AND TRAINING, and RETENTION
## (BY PLAINTIFFS AGAINST DIAMOND RESORTS DEFENDANTS)

86. Plaintiffs repeat and re-alleges each and every allegation made in the paragraphs about, as though set forth fully herein.

87. Defendants DIAMOND RESORTS, and each of them, knew or should have known with the exercise of minimum due diligence that certain DIAMOND RESORTS employees and/or managers, specifically Defendant PERCY, would upon being provided with alcohol at DIAMOND RESORTS events would cause harm upon Plaintiffs persons;

88. As a direct and proximate result of Defendants DIAMOND RESORTS negligent hiring, training and supervision practices, Plaintiffs, and each of them, sustained great pain of body and mind and mental stress and anxiety, all or some of which may be permanent and disabling in nature, all to Plaintiffs' damage and detriment, in an amount to be proven according to proof at time of trial.

89. Defendants DIAMOND RESORTS, and each of them, knew or should have known that its employees, specifically PERCY, engaged in activities that violated Plaintiffs and/or caused harm upon the persons of Plaintiffs, and nonetheless, Defendants allowed PERCY to remain employed.

90. As a direct and proximate result of Defendants DIAMOND RESORTS negligent retention, Plaintiffs, and each of them, sustained great pain of body and mind and mental stress and anxiety, all or some of which may be permanent and disabling in nature, all to Plaintiffs' damage and detriment, in an amount to be proven according to proof at time of trial.

-14-

91.   As a direct and proximate result of Defendants actions hereinabove, Plaintiffs suffered damages, according to proof to be determined at time of trial, and is entitled to recover the same from Defendant.

92.   Plaintiffs have been required to engage the services of an attorney to represent their interests and therefore Plaintiffs are entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for the following relief:

1.   For back-pay, front pay, lost benefits, statutory and other recoverable damages, and pre-judgment interest;

2.   For all compensatory damages, and other damages, permitted by law, according to proof, to be determined at time of trial;

3.   Punitive damages, according to proof to be determined at time of trial;

4.   Attorney's fees, expenses and costs of suit;

5.   All other legal and equitable relief allowed by Federal and State law; and

6.   Such other and further relief as the Court may wish to entertain.

DATED this 22nd day of March, 2017.

**THE THATER LAW GROUP, P.C.**
BY: /s/ M. Lani Esteban-Trinidad
M. Lani Esteban-Trinidad
6390 W. Cheyenne Ave., Ste. A
Las Vegas, Nevada 89108
Tel: (702) 736-5297
Facsimile: (702) 736-5299
Email: lani@thaterlawgroup.com
Attorney for Plaintiffs
RICHARD CASPER and NORMA JEAN MCGRATH

-15-

## JURY DEMAND

Pursuant to Nevada Rules of Civil Procedure Rule 38(b), Plaintiffs, and each of them, hereby demands a trial by jury as to all issues.

DATED this 22nd day of March, 2018.

**THE THATER LAW GROUP, P.C.**
BY: /s/ M. Lani Esteban-Trinidad
M. Lani Esteban-Trinidad
6390 W. Cheyenne Ave., Ste. A
Las Vegas, Nevada 89108
Tel: (702) 736-5297
Facsimile: (702) 736-5299
Email: lani@thaterlawgroup.com
Attorney for Plaintiffs
RICHARD CASPER and NORMA JEAN MCGRATH

-16-